**Not for Publication**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

DENISE T.,

              **Claimant,**

    **v.**

COMISSIONER OF SOCIAL SECURITY

              **Defendant.**

**Civil Action No. 24-5945**

**OPINION**

**SALAS, DISTRICT JUDGE**

Claimant Denise T. ("Claimant") appeals the decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for disability insurance benefits and supplemental security income (together, "disability benefits") under Title II and/or Title XVI of the Social Security Act (the "Act"), 42 U.S.C. § 1381, *et seq.*[1]  (*See* D.E. No. 13 ("Moving Brief" or "Mov. Br.") at 4).  The Court decides this matter without oral argument.  *See* Fed. R. Civ. P. 78(b).  For the reasons set forth below, the Court **AFFIRMS** the decision of the Commissioner.

### I.    BACKGROUND

On March 25, 2019, Claimant filed applications for disability benefits based on disabilities beginning on June 2, 2018.  (*See* D.E. No. 4 ("Administrative Record" or "R.") at 199).  She

---

[1]    Disability insurance benefits are governed by Title II of the Act and 20 C.F.R. Pt. 404; supplemental security income is governed by Title XVI of the Act and 20 C.F.R. Pt. 416.  With exceptions not relevant to this case, the provisions governing disability insurance benefits and supplemental security income are substantially identical.  *See Barnhart v. Thomas*, 540 U.S. 20, 24 (2003) ("For simplicity's sake, we will refer only to the Title II [42 U.S.C. § 401 *et seq.*] provisions, but our analysis applies equally to Title XVI [42 U.S.C. § 1381 *et seq.*].").

alleged disability based on several "severe impairments," including "internal derangement of the left knee and osteoarthritis with numerous surgeries; lateral ankle ligament reconstructions; left L5-S1 radiculopathy with spinal myofascitis; and chronic pain syndrome." (*Id*. at 718). The Social Security Administration denied both Claimant's initial application and her request for reconsideration. (*Id*. at 130 & 144). Thereafter, Claimant requested a hearing before an Administrative Law Judge ("ALJ") to review the application *de novo*. (*Id*. at 150–51). ALJ Jack Russak held such a hearing on March 10, 2020. (*Id*. at 35–63). On April 2, 2020, ALJ Russak "conclude[d] that the claimant was 'disabled' within the meaning of the Social Security Act from June 2, 2018 through January 1, 2020." (*Id*. at 14–30). However, Claimant's disability "ended on January 2, 2020." (*Id*. at 15). Claimant sought Appeals Council review. (*Id*. at 196–98). On January 8, 2021, the Appeals Council concluded that there were no grounds for review. (*Id*. at 1–6).

Claimant then filed an action before this Court on March 3, 2021. (*See generally* CIV. No. 21-4026 ("March 3, 2021 Action"), D.E. No. 1). The Commissioner did not file a responsive pleading. On April 26, 2022, the Commissioner submitted a proposed a consent order to remand. (*See generally id*., D.E. No. 20). The order specified the following:

> On remand, the administrative law judge will further evaluate the evidence and will be instructed to give further consideration to whether there was medical improvement beginning on or after January 2, 2020 with specific references to improvement in the symptoms, signs, and/or laboratory findings associated with [Claimant's] impairments as outlined 20 C.F.R. §§ 404.1594(b), 416.994(b). If there has been medical improvement, the ALJ will articulate how it is related to [Claimant's] ability to work.

(*Id*. at 1 (ECF pagination)). The next day, the Honorable Julien Xavier Neals, U.S.D.J. signed the consent order and remanded the matter to the Commissioner. (*Id.*, D.E. No. 21).

2

On August 1, 2022, the Appeals Council issued its remand order. (R. at 816–18). Upon remand, among other things, it instructed the ALJ to "[f]urther evaluate whether there was medical improvement related to the ability to work as of January 2, 2020," to "obtain evidence from a medical expert to assist in evaluating whether medical improvement occurred," to "[g]ive further consideration to the claimant's maximum residual functional capacity during period beginning on January 2, 2020 and provide rationale with specific references to evidence of record in support of assessed limitations," and "[i]f warranted by the expanded record," to "obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base." (*Id*.). The Appeals Council further noted that the ALJ's decision did "not contain an adequate evaluation of whether there was medical improvement related to the claimant's ability to work as of January 2, 2020[,]" and that that "the RFC assessment from the unfavorable period appears to be more limiting than the RFC assessment from the favorable period." (*Id*. at 816).

On December 19, 2023, ALJ Russak conducted a post-remand hearing. (*Id*. at 739–760). On January 23, 2024, the ALJ issued a decision "conclud[ing] that the claimant was 'disabled' within the meaning of the Social Security Act from January 2, 2020 through August 2, 2021." (*Id*. at 714–28).

Claimant filed the instant appeal on May 9, 2024, over which the Court has subject matter jurisdiction pursuant to 42 U.S.C. §§ 1383(c)(3) and 405(g). (*See generally* D.E. No. 1 ("Complaint" or "Compl.")). On January 21, 2025, Claimant filed a brief in support of this action. (*See generally* Mov. Br.). On February 20, 2025, the Commissioner opposed. (D.E. No. 15 ("Opp. Br.")).

## II.    LEGAL STANDARD

### A.    Standard Governing Benefits: Five-Step Sequential Analysis

To qualify for disability benefits, a claimant must show that he or she is disabled within the meaning of the Act.  42 U.S.C. § 423(a)(1)(E).  The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months[.]"  42 U.S.C. § 423(d)(1)(A); *Fargnoli v. Massanari*, 247 F.3d 34, 38–39 (3d Cir. 2001).  The individual's physical or mental impairment, furthermore, must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]"  42 U.S.C. § 423(d)(2)(A). "'[W]ork which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country."  U.S.C. § 423(d)(2)(A).

To determine whether a given claimant qualifies as disabled, "[t]he Commissioner uses a five-step process."  *Dellapolla v. Comm'r of Soc. Sec.*, 662 F. App'x 158, 160 (3d Cir. 2016) (citing 20 C.F.R. §§ 404.1520 & 416.920).  "The claimant bears the burden of proof for steps one, two, and four[,]" and "[t]he Commissioner bears the burden of proof for the last step."  *Sykes v. Apfel*, 228 F.3d 259, 263 (3d Cir. 2000) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987)).[2] If the determination at a particular step is dispositive of whether the claimant is or is not disabled, the inquiry ends.  *See* 20 C.F.R. § 404.1520(a)(4).

---

[2]    "Because step three involves a conclusive presumption based on the listings, no one bears that burden of proof."  *Id.* at 263 n.2 (citing *Yuckert*, 482 U.S. at 146 n.5).

***Step One***.  At step one, the claimant must show that he or she has not engaged in any substantial gainful activity since the onset date of his or her severe impairment.  20 C.F.R. § 404.1520(a)(4)(i).  If an individual engages in substantial gainful activity, he or she is not disabled under the Act, regardless of the severity of her impairment or other factors such as age, education, and work experience.  20 C.F.R. § 404.1520(b).  If the claimant demonstrates he or she has not engaged in substantial gainful activity, the analysis proceeds to step two.  *See* 20 C.F.R. § 404.1520(a)(4).

***Step Two***.  At step two, the claimant must show that his or her medically determinable impairments or a combination of impairments were "severe" as of the date of last insured ("DLI").  20 C.F.R. § 404.1520(a)(4)(ii).  *Jones v. Comm'r of Soc. Sec.*, No. 17-04691, 2023 WL 7180651, at *6 (D.N.J. Nov. 1, 2023) ("To be eligible for disability benefits, a claimant must establish that she was disabled prior to the date she was last insured." (first citing *Matullo v. Bowen*, 926 F.2d 240, 244 (3d Cir. 1990); then citing *Pearson v. Comm'r of Soc. Sec.*, 839 F. App'x. 684, 688 (3d Cir. 2020))).[3]  An "impairment or combination of impairments" is not "severe" unless it "significantly limits [the claimant's] physical or mental ability to do basic work activities[.]"  *See*, *e.g.*, *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004) (quoting 20 C.F.R. §§ 404.1520(c) & 416.920(c)).

***Step Three***.  At step three, the claimant may show, based on medical evidence, that his or her impairments met or equaled an impairment listed in the Social Security Regulations' "Listings of Impairments" in 20 C.F.R. § Part 404, Subpart P, Appendix 1 ("Listings") as of the DLI.  *See* 20 C.F.R. § 404.1520(a)(4)(iii).  If the claimant makes such a showing, he or she is presumptively

---

[3]      A Title II claimant seeking disability insurance benefits must prove disability prior to the DIL.  *See* 20 C.F.R. § 404.131.  However, there is no such requirement for Title XVI claimants seeking social security income.  *See generally* 20 C.F.R. § 416.  Claimant makes no argument that the ALJ misstated any of the time periods under consideration, for either disability insurance benefits or social security income.  (*See generally* Mov. Br.; R.).

disabled and entitled to benefits. *Id.* If he or she does not make that showing, he or she proceeds to step four. *See* 20 C.F.R. § 404.1520(a)(4).

**Step Four**. At step four, the claimant must show that he or she lacked the residual functional capacity ("RFC") to perform his or her past relevant work as of the DLI. 20 C.F.R. § 404.1520(a)(4)(iv); *see, e.g.*, *Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999). If the claimant lacks the RFC to perform his or her past relevant work, the analysis proceeds. *Id*.

**Step Five**. In the final step, the burden shifts to the Commissioner to show that there is a significant amount of other work in the national economy that the claimant can perform based on his or her age, education, work experience, and RFC. 20 C.F.R. § 404.1520(a)(4)(v); *see, e.g.*, *Plummer*, 186 F.3d at 428. If the Commissioner shows that the claimant can perform jobs that exist in significant numbers in the national economy, the claimant is not entitled to benefits. *See* 20 C.F.R. § 404.1520(a)(4)(v).

### B.      Standard Governing Benefits: Eight-Step Sequential Analysis

Once disability is found, the Social Security Act and the regulations promulgated thereto require the individual to be periodically reviewed to continue receiving benefits. *See* 42 U.S.C. § 423(f)(1)(A); 20 C.F.R. § 404.1594(a). In these "continuing disability reviews," the Commissioner must determine whether there has been any medical improvement in the individual's impairment—and if so, whether the medical improvement is related to the individual's ability to work and whether one or more of the exceptions to medical improvement applies. 20 C.F.R. § 404.1594(a). To determine if the claimant continues to be disabled, the ALJ must follow an eight-step evaluation process. 20 C.F.R. 404.1594(f); *Bryan S. v. Kijakazi*, No. 20-11145, 2022 WL 2916072, at *3–4 (D.N.J. July 25, 2022).

*Step One*.  First, the ALJ must determine whether the claimant is engaging in substantial gainful activity.  20 C.F.R 404.1594(f)(1).  If so, then the inquiry ends because the claimant is no longer disabled.  *Id*.

*Step Two*.  Second, the ALJ must determine whether the claimant has an impairment or combination of impairments which meets or medically equals the criteria of an impairment listed in the Listings.  If the claimant does, his or her disability continues.  20 C.F.R. 404.1594(f)(2)).  Otherwise, the ALJ proceeds to step three.

*Step Three*.  Third, the ALJ must determine whether medical improvement has occurred.  20 C.F.R. 404.1594(f)(3).  Medical improvement is any decrease in medical severity of the impairment(s) as established by improvement in symptoms, signs and/or laboratory findings.  20 C.F.R. 404.1594(b)(1).[4]  If medical improvement has occurred, the analysis proceeds to step four.  20 C.F.R. § 404.1494(f).  Otherwise, the analysis skips to step five.  *Id*.; *see also Marissa M.*, 2023 WL 143848, at *3.

*Step Four*.  Fourth, the ALJ must determine whether any medical improvement is related to the ability to work—"i.e., whether there has been an increase in the claimant's [RFC] based on the impairments present at the time of the most recent favorable medical determination."  *Bryan S.*, 2022 WL 2916072, at *3; 20 C.F.R. 404.1594(f)(4).  Medical improvement is related to the ability to work if it results in an increase in the claimant's capacity to perform basic work activities.  20 C.F.R. 404.1594(b)(3).  If the ALJ resolves that issue in the negative, the ALJ continues to step five and determines whether a specified exception exists.  *See* 20 C.F.R. § 404.1594(f)(5).  But if

---

[4]    To make this determination, the ALJ compares the medical severity of the impairments from the point of the most recent favorable determination with the current severity of the impairments.  *See Marissa M. v. Comm'r of Soc. Sec.*, No. 21-18821, 2023 WL 143848, at *3 (D.N.J. Jan. 10, 2023) (citing 20 C.F.R. § 404.1594(b)(7)).

the ALJ resolves that issue in the affirmative, or if certain specified exceptions exist, the ALJ must then proceed to step six. *Id.*

**Step Five**. Fifth, the ALJ must determine if an exception to medical improvement applies. 20 C.F.R. 404.1594(f)(5). There are two groups of exceptions. 20 C.F.R. 404.1594(d) & (e). If one of the first group exceptions applies, the analysis proceeds to the next step. 20 C.F.R. 404.1594(f)(5). If one of the second group exceptions applies, the claimant's disability ends. *Id.* If none apply, the claimant's disability continues. *Id.*[5]

**Step Six**. Sixth, the ALJ must determine whether all the claimant's current impairments in combination are severe. 20 C.F.R. 404.1594(f)(6). If all current impairments in combination do not significantly limit the claimant's ability to do basic work activities, the claimant is no longer disabled. *Id.* If they do so limit, the analysis proceeds to the next step. *Id.*

**Step Seven**. Seventh, the ALJ must assess the claimant's residual functional capacity based on the current impairments and determine if he or she can perform past relevant work. 20 C.F.R. 404.1594(f)(7). If the claimant can do so, the claimant's entitlement to benefits ends. *Id.* If the claimant cannot do so, then the ALJ proceeds to the final step.

**Step Eight**. Finally, the ALJ must determine whether other work exists that the claimant can perform, given his residual functional capacity and considering his age, education, and past work experience. 20 C.F.R. 404.1594(f)(8). If the claimant can perform other work, he or she is

---

[5] The first group of exceptions applies where substantial evidence shows any of the following: (1) that the claimant "is [the] beneficiary of advances in medical or vocational therapy or technology;" (2) that the claimant has "undergone vocational therapy;" (3) that "based on new or improved diagnostic or evaluative techniques [the] impairment(s) [are] not as disabling as ... considered to be at the time of the most recent favorable decision;" or (4) "that any prior disability was in error." 20 C.F.R. §§ 404.1594(d), 416,994(b)(3). The second set of exceptions applies where substantial evidence shows any of the following: (1) that "a prior determination or decision was fraudulently obtained;" (2) that the claimant has not cooperated with Social Security officials; (3) that the claimant cannot be found; or (4) that the claimant failed to follow the prescribed treatment. 20 C.F.R. §§ 404.1594(e); *see also Hagans v. Astrue*, No. 10-1951, 2011 WL 1344188, at *4 n.5 (D.N.J. Apr. 8, 2011), *aff'd sub nom. Hagans v. Comm'r of Soc. Sec.*, 694 F.3d 287 (3d Cir. 2012).

no longer disabled. *Id*. If the claimant cannot perform other work, his or her disability continues. *Id.*

### C.    Standard of Review

The Court exercises plenary review of the ALJ's application of the law and reviews factual findings for "substantial evidence." *See* 42 U.S.C. § 405(g); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). Substantial evidence is "more than a mere scintilla" of evidence and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Although substantial evidence requires "more than a mere scintilla, it need not rise to the level of a preponderance." *McCrea*, 370 F.3d at 360. The Supreme Court reaffirmed this understanding of the substantial evidence standard in *Biestek*. *See Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) ("[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is 'more than a mere scintilla[.]'"(quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938))).

The Court is bound by the ALJ's findings of fact that are supported by substantial evidence "even if [it] would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). "Where evidence in the record is susceptible to more than one rational interpretation, [the Court] must accept the Commissioner's conclusions." *Izzo v. Comm'r of Soc. Sec.*, 186 F. App'x 280, 284 (3d Cir. 2006). Thus, the Court is limited in its review because it cannot "weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992).

Finally, while failure to meet the substantial evidence standard normally warrants remand, such error is harmless where it "would have had no effect on the ALJ's decision." *Perkins v.*

9

*Barnhart*, 79 F. App'x 512, 515 (3d Cir. 2003).  In other words, on appeal, a claimant bears the burden of showing not merely that the Commissioner erred, but also that the error was harmful. *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination.").

## III.     ALJ'S DECISION[6]

### A.        Claimant's Disability from January 2, 2020 Through August 2, 2021.[7]

The ALJ first conducted the five-step sequential analysis to determine whether Claimant was disabled from January 2, 2020 through August 2, 2021.[8]

---

[6]        The holdings described herein are from the ALJ's January 23, 2024 decision.  (See R. at 714–728).

[7]        For clarity's sake, the Court reiterates that, although there is overlap between the five-step analysis and its eight-step counterpart, the steps do differ.  When this Court discusses the five-step evaluation the ALJ undertook in determining Claimant's disability from January 2, 2020 through August 2, 2021 ("Period Two"), it refers to the five steps outlined in 20 C.F.R. § 404.1520 used to determine whether a claimant is disabled as an initial matter.  And when this Court discusses the eight-step evaluation for August 3, 2021 onward ("Period Three"), it refers instead to the eight steps outlined in 20 C.F.R. § 404.1594 used to determine whether a claimant remains disabled after an initial disability determination has been made.

[8]        As ordered, the ALJ did not reconsider the period between June 2, 2018 and January 1, 2020 ("Period One"), for which he had already concluded Claimant was disabled.  (*See* CIV No. 21-4026, D.E. No. 21 ("The administrative law judge will be instructed to limit the period at issue to the period beginning on or after January 2, 2020, the date the administrative law judge found the claimant's disability ended, i.e., the ALJ will limit the new decision to only the unfavorable portion of the April 2, 2020 decision.")).  Claimant does not advance any legal argument that the ALJ erred either in (i) conducting the five-step analysis—rather than the eight-step analysis—for Period Two; or (ii) comparing Claimant's RFC for Period Three to the RFC the ALJ found for Period Two—rather than Period One. (*See*, *e.g.*, Mov. Br. at 11 ("Quite obviously, as in the last round of litigation for this Court, [claimant] does not challenge the amended finding that her disability which commenced, as she alleged, on June 2, 2018 extended through August 2, 2021 [Periods One and Two]. The issue before this Court is whether [claimant's] disability was properly ceased beginning August 3, 2021 [Period Three].); *id*. at 24 ("There is no need for [Claimant] to challenge this RFC [for Period Two] because it maintains and extends [Claimant's] period of disability.")).  Neither is the Court convinced that, even if Claimant *did* successfully argue that the ALJ erred in this fashion, such error would change the outcome of Claimant's case.  *See Shinseki*, 556 U.S. at  409 ("[T]he burden of showing that an [alleged] error is harmful normally falls upon the party attacking the agency's determination."); *Padgett v. Comm'r of Soc. Sec.*, No. 16-9441, 2018 WL 1399307, at *2 (D.N.J. Mar. 20, 2018) ("[B]ecause [claimant] has articulated no analysis of the evidence, the Court does not understand what argument [claimant] has made here. [Claimant] has done no more than throw down a few pieces of an unknown jigsaw puzzle and left it to the Court to put them together. The Court does not assemble arguments for a party from fragments.").

At step one, the ALJ held that Claimant "has not engaged in substantial gainful activity since January 2, 2020, the date the claimant became disabled." (R. at 718. (citing 20 C.F.R. 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*)).

At step two, the ALJ held that "[f]rom January 2, 2020 through August 2, 2021, the period during which the claimant was under a disability, the claimant had the following severe impairments: internal derangement of the left knee and osteoarthritis with numerous surgeries; lateral ankle ligament reconstructions; left L5-S1 radiculopathy with spinal myofascitis; and chronic pain syndrome." (*Id.* (citing 20 C.F.R. 404.1520(c) and 416.920(c))). However, the ALJ determined that "the claimant's medically determinable mental impairments" were nonsevere. (*Id.* at 720).

At step three, the ALJ held that none of the Claimant's severe impairments met or equaled the requirements of listing 1.15, 1.17, or 1.18. (*Id.*). The ALJ noted that "[t]he record [did] not establish the medical signs, symptoms, laboratory findings or degree of functional limitation required to meet or equal the criteria of any listed impairment," and that "no acceptable medical source designated to make equivalency findings has concluded that the claimant's impairment(s) medically equal a listed impairment." (*Id.*).

At step four, the ALJ determined that Claimant had the following RFC:

> [F]rom January 2, 2020 through August 2, 2021, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except she is limited to: a sit/stand option – allowed to sit for two hours then stand up to 30 minutes off task; occasionally push or pull with the bilateral upper extremities; never operate foot controls bilaterally; occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; occasionally stoop; never crouch, kneel, or crawl; occasionally balance but never balance on narrow, slippery, or erratically moving surfaces; no exposure to heavy industrial or moving machinery, unprotected heights, vibrations, loud noises, or driving vehicles; jobs that can be performed with a handheld

11

assistive device required only for uneven terrain or prolonged ambulation; and occasionally overhead reach bilaterally.

(*Id*. at 720–21).  Based on this RFC, the ALJ determined that Claimant was unable to perform her past relevant work as a "cashier-checker," "sales clerk," or "assistant manager."  (*Id*. at 722).

At step five, the ALJ determined that, from January 1, 2020 to August 2, 2021, Claimant was unable to do other work existing in significant numbers in the national economy, based on (i) Claimant's RFC; (ii) age ("[C]laimant was a younger individual age 18-44"); (iii) "limited education"; and (iv) "acquired job skills," which "do not transfer to other occupations within the [RFC]."  (*Id*.).

Based on each of these determinations, the ALJ held that Claimant was disabled under the meaning of the Act from January 2, 2020 through August 2, 2021.

### B.    Claimant's Continuing Disability as of August 3, 2021.

The ALJ then conducted the eight-step sequential analysis to determine whether Claimant's disability continued past August 2, 2021.

At step one, as the ALJ previously held, Claimant had not engaged in substantial gainful activity since January 2, 2020.  (R. at 718).  Therefore, the analysis proceeded to step two.

At step two, the ALJ held that, beginning on August 3, 2021, "[C]laimant has not had an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1594(f)(2) and 416.994(b)(5)(i))."  (*Id*. at 724).[9]

At step three, the ALJ held that medical improvement had occurred as of August 3, 2021. (*Id*.).

---

[9]      The ALJ considered listings 1.15, 1.17, and 1.18.  (*See* R. at 724)

12

At step four, the ALJ further determined that Claimant's medical improvements related to her ability to work and increased her RFC.  (*Id*.).[10]

At step six,[11] the ALJ held that "[C]laimant ha[d] not developed any new impairment or impairments since August 3, 2021," and so her "current severe impairments [remained] the same as that present from January 2, 2020 through August 2, 2021."  (*Id*. at 723).  In other words, Claimant's severe impairments remained: "internal derangement of the left knee and osteoarthritis with numerous surgeries; lateral ankle ligament reconstructions; left L5-S1 radiculopathy with spinal myofascitis; and chronic pain syndrome."  (*Id*. at 718).  The ALJ thus continued to steps seven and eight.

At step seven, the ALJ determined that Claimant "is unable to perform past relevant work."  (*Id*. at 727 (citing 20 CFR 404.1565 and 416.965)).

Finally, at step eight, the ALJ held that, "[b]eginning August 3, 2021, considering the claimant's age, education, work experience, and residual functional capacity, there have been jobs that exist in significant numbers in the national economy that the claimant can perform."  (*Id*. at 727–28 (citing 20 CFR §§ 404.1560(c), 404.1566, 416.960(c) and 416.966)).

Accordingly, the ALJ held that Claimant's "disability ended on August 3, 2021" and that Claimant had not become disabled again since.  (*Id*. at 728).

---

[10]    The ALJ determined that Claimant's increased RFC allowed her "to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except she is limited to: a sit/stand option – allowed to sit for two hours then stand up to 15 minutes off task; occasionally push or pull with the bilateral upper extremities; never operate foot controls bilaterally; occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; occasionally stoop; never crouch, kneel, or crawl; occasionally balance but never balance on narrow, slippery, or erratically moving surfaces; no exposure to heavy industrial or moving machinery, unprotected heights, vibrations, loud noises, or driving vehicles; jobs that can be performed with a handheld assistive device required only for uneven terrain or prolonged ambulation; and occasionally overhead reach bilaterally."  (R. at 724–25).

[11]    As he found that Claimant's medical improvement was related to her ability to do work, the ALJ skipped the exceptions at step five.  (*See* R. at 724–26); *see, e.g.*, *Marissa M.*, 2023 WL 143848, at *3 ("'If [the] medical improvement is not related to [the] ability to do work,'" then the analysis proceeds to step five. If it is related, then the analysis goes to step six." (citation modified) (quoting 20 C.F.R. 404.1594(f)(4))).

IV.    DISCUSSION

The issue before the Court is whether the ALJ properly held that Claimant's disability ceased beginning on August 3, 2021. (*See* Mov. Br. at 11 ("Quite obviously, as in the last round of litigation for this Court, [Claimant] does not challenge the amended finding that her disability which commenced, as she alleged, on June 2, 2018 extended through August 2, 2021.")). Claimant argues (i) that the ALJ's decision failed to offer substantial evidence "of any medical improvement" in her conditions; and (ii) that the ALJ applied an RFC for the period following August 2, 2021 that was likewise unsupported by substantial evidence. (*See* Mov. Br. at 9). The Court addresses each argument in turn.

A.    **Failing to Properly Apply Medical Improvement Standards**

The ALJ found at step three that Claimant exhibited medical improvement as of August 3, 2021. (R. at 728). Claimant submits that significant record evidence refutes the ALJ's conclusion that her medical condition approved as of that date. (*See* Mov. Br. at 14–20 & 35 ("Here, as outlined above, there is no evidentiary rationale supporting medical improvement of the same impairments on August 3, 2021 and there is plenty of evidence, all recited without contradiction or complaint by the ALJ, that [claimant's] impairments did not improve on that date or any other.")). Specifically, Claimant points to evidence[12] that (i) she "continued her needed long-term pain management"; (ii) she "continued to receive gel pain injections into her left knee"; (iii) she underwent "a left knee arthroscopy with additional debridement of both the quadriceps and patellar tendons and further removal of loose bodies within the knee[,]" after which "she required rehabilitation therapy"; and (iv) her "spinous process pain . . . continued" and "she was recommended to continue Gabapentin and Oxycodone and to consider surgical implantation of a

---

[12]    The Court notes that Claimant does not cite to the record in its recitation of much of this evidence. (*See* Mov. Br. at 17–20).

14

spinal cord stimulator." (*See* Mov. Br. at 17–20).  In response, the Commissioner argues that, "[i]n providing the rationalization for the finding that [claimant] no longer was disabled as of August 3, 2021, the ALJ accurately summarized the prior administrative findings as well as the treatment evidence that supports a finding of medical improvement as of August 3, 2021."  (Opp. Br. at 15).

The ALJ's detailed decision evidences that he properly applied the medical improvement standard by comparing Claimant's medical evaluations from before August 3, 2021 with those from after.  *See, e.g.*, *Ross v. Astrue*, No. 08-4980, 2009 WL 4250060, at *7 (D.N.J. Nov. 24, 2009) (affirming ALJ's finding of medical improvement where ALJ considered medical records showing claimant was "'improving slowly as expected' following [a] surgery" and "exhibiting 'normal' muscle tone and strength.").  As the Commissioner identifies, the ALJ considered significant record evidence from the time period beginning on August 3, 2021, such as: (i) a report from Claimant's podiatrist Dr. Sharna, who saw Claimant on August 3, 2021 and reported that she "continued to experience pain, but her bigger complaint was numbness and tingling"; (ii) subsequent records from Dr. Sharna that "did not reflect significant abnormalities other than tenderness"; (iii) examination findings from Claimant's orthopedist Dr. Grau, who reported in August of 2021 that Claimant "reported pain with motion that was relieved with rest and reported 60% pain relief since the start of [a gel] injection series"; (iv) an orthopedic evaluation from Dr. Grau in March 2022 reporting that Claimant's pain was "well controlled" and noting "'[e]xcellent progress . . . in terms of pain and restoration of function'"; and (v) a January 2023 report from another physician, Dr. DeJesus, that Claimant exhibited "negative orthopedic test findings and full strength in all extremities."  (*See id*. at 15–17 (citing R. at 1418, 1471–72, 1480–82, 1500–15, 1757–1811, & 1885); *see also* R. at 725–27).  Although Claimant points out certain record evidence which she argues should have led the ALJ to find that her disability did not improve

15

beginning on August 3, 2021, the Court must "uphold the ALJ's decision even if there is contrary evidence that would justify the opposite conclusion, as long as the 'substantial evidence' standard is satisfied." *Edghill v. Saul*, No. 20-0461, 2021 WL 2434046, at *10 (D.N.J. June 15, 2021); *see also Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x 761, 764 (3d Cir. 2009) ("The presence of evidence in the record that supports a contrary conclusion does not undermine the [ALJ's] decision so long as the record provides substantial support for that decision."); *Carolyn S. v. Comm'r of Soc. Sec.*, No. 21- 10858, 2022 WL 4550628, at *8 (D.N.J. Sept. 28, 2022) ("[Claimant] fails to recognize that where, as here, there is sufficient [evidence] in the record which would support two contrary conclusions, the ALJ's decision on the matter is entitled to deference.").

Moreover, the Court does not find that the ALJ omitted record evidence from his decision such that it would be "impossible for the Court to determine whether the ALJ considered" crucial evidence. *Contra Diamante v. Saul*, No. 17-8059, 2019 WL 13405954, at *14 (D.N.J. Aug. 16, 2019). To the contrary, the ALJ stated that he made his findings "after careful consideration of the entire record"—and this Court takes him at his word, as it must. (R. at 715, 720, & 724); *see Jones v. Comm'r of Soc. Sec.*, 297 F. App'x 117, 120 (3d Cir. 2008) ("[W]e take the ALJ at his word"). Neither does the Court find that the ALJ "arbitrarily" selected August 3, 2021 as Claimant's date of medical improvement, given the significant record evidence the ALJ considered from the time period following the operative date. (*See* R. at 725–27); *contra Nicholson v. Comm'r of Soc. Sec.*, No. 10-750, 2011 WL 1082328, at *4 (D.N.J. Mar. 21, 2011).

In sum, the ALJ reached his finding of medical improvement after "applying the appropriate standard, utilizing direct comparisons of [Claimant's] physical impairments before and after" August 3, 2021. *Ross*, 2009 WL 4250060, at *7. The ALJ "fairly characterized this evidence and appropriately relied on it when finding medical improvement as of" August 3, 2021,

and "[t]o the extent that [Claimant] insists that this Court should reach a different result based on this evidence, [Claimant] is asking the Court to improperly reweigh the evidence, which it cannot do." *See Alicia R. v. O'Malley*, 22-2956, 2024 WL 2815026, at \*8 (D.N.J. June 3, 2024). (citing *Chandler*, 667 F.3d at 359  ("Courts are not permitted to reweigh the evidence or impose their own factual determinations [under the substantial evidence standard].")).  Accordingly, the ALJ did not err in finding medical improvement on and after August 3, 2021.

### B.    Lack of Substantial Evidence for RFC Determination

The ALJ found that, beginning on August 3, 2021, Claimant possessed the RFC to:

> [P]erform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except she is limited to: a sit/stand option – **allowed to sit for two hours then stand up to 15 minutes off task**; occasionally push or pull with the bilateral upper extremities; never operate foot controls bilaterally; occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; occasionally stoop; never crouch, kneel, or crawl; occasionally balance but never balance on narrow, slippery, or erratically moving surfaces; no exposure to heavy industrial or moving machinery, unprotected heights, vibrations, loud noises, or driving vehicles; jobs that can be performed with a handheld assistive device required only for uneven terrain or prolonged ambulation; and occasionally overhead reach bilaterally.

(R. at 724–25 (emphasis added)).[13]  This RFC differs from Claimant's Period Two RFC—which Claimant does not challenge—in only one respect: the ALJ previously held that Claimant was "allowed to sit for two hours and then stand up for **30** minutes off task[,]" rather than fifteen.  (*Id*. at 720 (emphasis added)).  Claimant argues that this finding is not supported by substantial

---

[13]      "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."  20 C.F.R. § 404.1567(a).

evidence, and that the ALJ improperly relied on his own lay opinion in reaching his determination. (*See, e.g.*, Mov. Br. at 26–28).

In opposition, the Commissioner contends that "the ALJ explained the basis for his finding of medical improvement, and he did not impermissibly provide a lay opinion." (Opp. Br. at 17–18). The Commissioner argues that, in determining Claimant's RFC for the period following August 3, 2021, "the ALJ considered the entire record including [Claimant's] allegations, her treatment, the objective findings from her examinations, and the opinion evidence and prior administrative medical findings, as well as the medical expert testimony." (*Id*. at 19). The Commissioner points in particular to Dr. Chopra's testimony:

> Q. What about sitting and standing, Doctor?
>
> A. At one time, in terms of sitting, I would recommend two hours. . . . And in a total eight-hour workday, she is able to sit for those eight hours, if need be, once again, as long as there's breaks in between, two hours.
>
> Q. And, Doctor, in terms of work, sitting for two hours and then getting up and moving around, how long would that getting up and moving around [be]?
>
> A. 15 minutes is fine.

(*See* R. at 2008 (citation modified); *see also* Opp. Br. at 19; R. at 726).

The ALJ did not, as Claimant contends, rely on his own lay opinion in making the RFC determination. To the contrary, and as detailed above, the ALJ relied on "extensive medical and other record evidence when crafting the RFC"—including Dr. Chopra's testimony. *Kayra G. v. Kijakazi*, No. 20-10897, 2023 WL 2674769, at \*12 (D.N.J. Mar. 29, 2023) (holding that the ALJ did not improperly base the RFC on her own lay opinion where the ALJ based the RFC on medical evidence in the record); *see also Kelli S. J. v. Kijakazi*, No. 21-11656, 2023 WL 8618241, at \*8 (D.N.J. Dec. 13, 2023) ("[Claimant] further argues that the ALJ improperly relied on her own lay opinion and speculation when crafting the RFC because there was no medical opinion being

18

credited with regards to all of [her] limitations. [Claimant's] argument is not well taken. As set forth above, the ALJ properly relied on record evidence, not merely her own lay opinion when assessing [Claimant's] RFC." (citation modified)).[14]  Moreover, in determining Claimant's RFC *both* for Periods Two and Three, the ALJ (i) specified how frequently Claimant would need to alternate positions; (ii) referenced medical testimony making clear that Claimant was able to sit without standing or stretching for two hours at a time—well beyond thirty minutes; and (iii) thoroughly considered evidence from after the date of medical improvement.  (*Compare* R. at 714–28, *with id*. at 816–18 ("Notably, the vocational expert indicated there would likely be no jobs for a person who needed to stand, sit up, or stretch every 10 minutes, though there would be jobs for a person who only needed to do so every 30 minutes.")).

Claimant's argument, then, appears to amount to "a disagreement with the ALJ's decision, which the Court has already explained is supported by substantial evidence." *Kayra G.*, 2023 WL 2674769, at *12.; *see also Perkins v. Barnhart*, 79 F. App'x 512, 514–15 (3d Cir. 2003) ("[Claimant's] argument here amounts to no more than a disagreement with the ALJ's decision, which is soundly supported by substantial evidence.").  The Court thus concludes that the ALJ's findings regarding Claimant's RFC for the period beginning on August 3, 2021 are

---

[14]    Dr. Chopra's testimony aside, "[t]o the extent that [Claimant] suggests that an ALJ must support every RFC limitation with a matching medical opinion, [she] is mistaken."  *Kelli S. J.*, 2023 WL 8618241, at *8; *see also Mays v. Barnhart*, 78 F. App'x 808, 813 (3d Cir. 2003) ("Primarily, the ALJ is responsible for making a residual functional capacity determination based on the medical evidence, and he is not required to seek a separate expert medical opinion."); *Titterington v. Barnhart*, 174 F. App'x 6, 11 (3d Cir. 2006) ("There is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC.").

consistent with the record evidence and "enjoy substantial support in the record." *Kelli S. J.*, 2023 WL 8618241, at *8.

## V.    CONCLUSION

For the foregoing reasons, the Court **AFFIRMS** the decision of the Commissioner.  An appropriate Order accompanies this Opinion.

Dated: February 25, 2026                                    *s / Esther Salas*
                                                            **Esther Salas, U.S.D.J.**